IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Williams Rail Service LLC, ) | |
| ) | C.A. No. 7:07-1528-HMH |
| Plaintiff, ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| Robert Stewart, as Chief of the South ) | |
| Carolina Law Enforcement Division, ) | |
| Billy D. Blanton, as Sheriff of Cherokee ) | |
| County, Henry McMaster, as Attorney ) | |
| General of the State of South Carolina ) | |
| and Harold W. Gowdy, III, as Solicitor ) | |
| of the Seventh Judicial Circuit, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the Defendants' motion to dismiss the Plaintiff's complaint pursuant to Burford v. Sun Oil Co., 319 U.S. 315 (1943), abstention and Younger v. Harris, 401 U.S. 37 (1971), abstention. Further, the Defendants move to dismiss the Plaintiff's complaint arguing that "the enforcement of South Carolina's gambling laws against Plaintiff is not preempted by federal law." (Defs.' Mem. Supp. Mot. Dismiss 2.) For the reasons set forth below, the court grants the Defendants' motion to dismiss because the enforcement of South Carolina's gambling laws is not preempted by federal law in this case.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, the Plaintiff is a licensed Class III rail carrier subject to the jurisdiction of the Surface Transportation Board ("STB") through the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). The Plaintiff "entered into a lease agreement with certain entities to operate video game machines in Pullman rail cars on spur tractors that it was acquiring for its rail operations . . . ." (Compl. ¶ 10.) The Plaintiff alleges

1

that "the South Carolina Law Enforcement Division (SLED) obtained and executed a search warrant on May 7, 2007, for the Plaintiff's Pullman rail cars situated on 1300 feet of rail located in Blacksburg, South Carolina and referenced in the Plaintiff's filing with the STB." (Id. ¶ 12.) "SLED agents seized more than $15,000 from the rail cars and WRS office and more than 100 video game machines valued at more than $5,000 each." (Id. ¶ 13.) The Plaintiff alleges that the operation of video game machines in its rail cars is "an integral part of [the Plaintiff's] railroad transportation service under the jurisdiction of the STB in that it is maximizing use of its rail property to develop capital to assist in investing in rail infrastructure." (Id. ¶ 22.)

The Plaintiff filed this action under the authority of Ex Parte Young, 209 U.S. 123 (1908) and 42 U.S.C. § 1983 seeking "a ruling from this Court on the issue of whether Williams Rail, a Class III rail carrier, use of its rail cars located on a rail spur to operate video game machines falls within the exclusive jurisdiction of the Surface Transportation Board (STB)." (Pl.'s Mem. Opp'n Mot. Dismiss 1.) The Plaintiff alleges that "all other State and Federal laws, with the exception of certain safety regulations, have been preempted, including but not limited to South Carolina's laws prohibiting gambling and the possession of certain video games prohibited by S.C. Code Section 12-21-2710." (Pl.'s Compl. ¶ 1.)

## II. DISCUSSION OF THE LAW

### A. Dismissal Standard

In the United States District Court, the plaintiff must only state a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Dismissal of a complaint for failure to state a claim is proper "only if it can be said that on the claim as pleaded the claimant can prove no set of facts that would entitle her to relief." Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995). The court will treat factual allegations

of the nonmoving party as true. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994).

## B. The Defendants' Motion to Dismiss

The Defendants argue that the Plaintiff's case must be dismissed pursuant to Burford abstention and Younger abstention. Further, the Defendants argue that the Plaintiff has failed to state a claim upon which relief may be granted because federal law does not preempt South Carolina from enforcing its gambling laws. For the reasons set forth below, the court agrees with the Defendants that federal law does not preempt South Carolina from enforcing its gambling laws.

49 U.S.C. § 10501(b) (1997) grants the STB exclusive jurisdiction over

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

49 U.S.C. § 10501(b) further states that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." However, "where the state's police power is involved," federal preemption is not presumed. Specialized Carriers & Rigging Assoc. v. Virginia, 795 F.2d 1152, 1155 (4th Cir. 1986) (internal quotation marks omitted). Where the State acts "in a field which the States have traditionally occupied," the court will retain the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230

3

(1947)). "Reliance on the presumption against pre-emption limits 'congressional intrusion into the States' traditional prerogatives and general authority to regulate for the health and welfare of their citizens.'" Florida East Coast Ry. Co. v. City of West Palm Beach, 266 F.3d 1324, 1328 (11th Cir. 2001) (quoting City of Boerne v. Flores, 521 U.S. 507, 534 (1997)).

"The 'ultimate touch-stone' of preemption analysis is congressional intent: 'Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it.'" Green Mountain R.R. Corp. v. Vermont, 404 F.3d 638, 641 (2d Cir. 2005) (quoting Medtronic, Inc., 518 U.S. at 485-86).

In determining whether South Carolina's gambling laws are preempted in this case, the court looks at the text, the legislative history, and the purpose of the ICCTA. Florida East Coast Ry. Co., 266 F.3d at 1329. The statute provides that "express preemption applies only to state laws with respect to *regulation* of rail transportation." Id. at 1331 (internal quotation marks omitted). The ICCTA preempts the states from regulating railroads, however, the states "retain certain police powers which protect public health and safety." Green Mountain R.R. Corp., 404 F.3d at 643 (internal quotation marks omitted). "[S]tates and towns may exercise traditional police powers over the development of railroad property." Id. Such state regulations must "protect public health and safety, [be] settled and defined, . . . obeyed with reasonable certainty, and . . . approved (or rejected) without the exercise of discretion on subjective questions." Id. Thus, "[e]lectrical, plumbing and fire codes, direct environmental regulations enacted for the protection of the public health and safety, and other generally applicable, non-discriminatory regulations and permit requirements would seem to withstand preemption." Id.

>S.C. Code Ann. § 12-21-2710 (2000) provides in pertinent part that
>
>>It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.

Further, S.C. Code Ann. § 12-21-2712 requires that law enforcement seize the gambling machines described in § 12-21-2710.

In <u>Johnson v. Collins Entertainment Co.</u>, the Fourth Circuit recognized that "[t]he regulation of gambling enterprises lies at the heart of the state's police power. Formulations of that power underscore the state's paramount interest in the health, welfare, safety, and morals of its citizens." 199 F.3d 710, 720 (4th Cir. 1999) (internal citations omitted). Moreover, the Fourth Circuit noted that "[t]he regulation of lotteries, betting, poker, and other games of chance touch all of the above aspects of the quality of life of state citizens. The question of how best to regulate gambling activity is also one to which different states can arrive at different answers based on their different experiences." <u>Id.</u> (internal citations omitted).

>State gaming policies reflect a delicate trade-off between the economic boon of increased tax revenue and enhanced employment on the one hand and the risk of moral rot, human exploitation, and political corruption on the other. Put another way, the question is whether the maximization of individual freedom and choice works a wholesale diminution in general social well-being. Each side of this scale embodies the classic subject matter of state prerogative.

Id. South Carolina's non-discriminatory gambling laws were enacted to protect the health and welfare of the citizens of South Carolina. As noted in Johnson, South Carolina's regulation of gambling lies firmly within its police powers. Further, South Carolina's gambling regulations are settled and defined and are not subjective in application.

In addition, the legislative history and the purpose of the ICCTA support the conclusion that Congress did not intend to preempt the states' police powers. The legislative history notes that "[a]lthough States retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive." See H.R.Rep. No. 104-311, at 96 (1995). The Eleventh Circuit noted in Florida East Coast that "[t]he statutory changes brought about by the ICCTA reflect the focus of legislative attention on removing *direct* economic regulation by the *States*, as opposed to the incidental effects that inhere in the exercise of traditionally local police powers such as zoning." 266 F.3d at 1337. Therefore, the court concludes that South Carolina's gambling laws and the enforcement of these laws are a clear exercise of its police powers to protect the health and welfare of its citizens and that the text, legislative history, and purpose of the ICCTA support the finding that South Carolina's enforcement of its gambling laws is not preempted in this case by the STB. Based on the foregoing, the court finds that the Plaintiff's use of its rail cars located on a rail spur to operate video game machines does not fall within the exclusive jurisdiction of STB.

It is therefore

**ORDERED** that the Defendants' motion to dismiss, docket number 13, is granted.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
August 27, 2007